IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SEMYYA CUNNINGHAM, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. __19CV2831__ ) |
| ADVENTIST HEALTHCARE, INC. | ) ) ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Semyya Cunningham hereby alleges as follows:

### PRELIMINARY STATEMENT

1. Plaintiff brings this action alleging violations of Title VII of the Civil Rights Act of 1964, 72 U.S.C. §§ 2000e *et seq.* ("Title VII") to challenge Defendant Adventist HealthCare, Inc.'s policy and practice of race discrimination in employment.

2. Contrary to longstanding guidance by the Equal Employment Opportunity Commission and federal Title VII case law, Defendant maintains a blanket, across-the-board no-hire, must-fire policy of with respect to applicants and employees with a criminal history, despite the fact that similar employment policies have been repeatedly shown to have a disparate impact on African-American and other minority job applicants and employees.

3. Plaintiff is an African-American registered nurse whose criminal history pre-dates her employment with Defendant and was disclosed upon applying for work. She was fired by Defendant expressly because of her previous criminal history, despite completing fifteen months of highly satisfactory job performance—performance reflected in strong evaluations and a raise in pay—and the absence of any business necessity for the policy or any relationship between her criminal history and her job duties.

4. Plaintiff brings this lawsuit to obtain back pay in compensation for the harm she has suffered as a result of Defendant's unlawful employment policy, having been deprived of wages and income that she otherwise have had the opportunity to earn had Defendant not fired her on the basis of her previous criminal history.

## THE PARTIES

5. Plaintiff Semyya Cunningham is a former employee of Defendant Adventist HealthCare. She was formally terminated from employment on June 6, 2019.

6. Defendant Adventist HealthCare, Inc. is a not-for-profit health services organization based in Gaithersburg, Maryland. Defendant employs more than 6,200 employees and thus is subject to the mandates of Title VII and other federal laws regarding equal opportunities in employment.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction over Title VII claims pursuant to 28 U.S.C. § 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3), because they arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

8. This Court has personal jurisdiction over Defendant because Defendant has its headquarters in Gaithersburg, which is in this judicial district.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. § 2000e-5(f)(3), because Defendant maintains offices and conducts business in this district, and because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district.

10. Plaintiff has exhausted her administrative remedies and complied with all statutory prerequisites under Title VII claims. Plaintiff filed a charge of discrimination with the

2

Equal Employment Opportunity Commission ("EEOC") on June 18, 2019. By notice dated June 27, 2019, the EEOC issued a Notice of Right to Sue. *See* Ex. 1. This lawsuit was commenced within ninety days of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

11.  In February 2018, Plaintiff was convicted in the Eastern District of Virginia on federal charges of mail fraud, wire fraud, and money laundering, based on events allegedly occurring in 2014 and 2015.

12.  In March 2018, following her conviction but before her sentencing, Plaintiff was hired by Defendant as a registered nurse in the Emergency Department at Washington Adventist Hospital in Takoma Park, Maryland, one of several health care facilities in the greater Washington area owned and operated by Defendant.

13.  Upon applying for employment with Defendant, Plaintiff disclosed that she had been convicted of federal crimes.

14.  Plaintiff maintained employment with Defendant at Washington Adventist Hospital from March 2018 until June 2019.

15.  Plaintiff's base pay while employed by Defendant was $47.45 per hour, for an expected gross base pay of approximately $1900 per week.

16.  Plaintiff generally worked four 12.5-hour shifts per week, three of which were required and one of which was attributable to staffing shortages. Plaintiff therefore regularly worked more than 40 hours per week, and accordingly was eligible for, and received, overtime wages.

17. In addition, Washington Adventist Hospital has evening, night, and weekend shift premiums of up to $7.00 per hour. Plaintiff frequently worked shifts carrying these premiums, and thus regularly earned wages exceeding her base pay by a substantial margin.

18. Plaintiff's duties while employed with Defendant were focused exclusively on patient care. Her job duties did not involve wire transactions, mail transactions, handling money, or any other activity related to the offenses for which she was convicted.

19. During the fifteen months that Plaintiff was employed by Defendant, Plaintiff received favorable performance reviews, which were documented in her employee file.

20. Plaintiff's job performance was sufficiently satisfactory that at one point during her fifteen months of employment, Defendant gave her a raise in pay.

21. On June 3, 2019, Plaintiff was informed by her manager that she was being discharged from employment on the basis of her previous criminal history.

22. Upon informing Plaintiff of the employment decision, Plaintiff's manager apologized to Plaintiff, stating that the decision had come from above, specifically from Defendant's Human Resources Department.

23. Plaintiff's manager and director attended a meeting with Defendant's Human Resources Manager Donna Scott. During the meeting, Ms. Scott stated that all employees with a criminal history must be terminated.

24. The next day, June 4, 2019, Plaintiff sent an email to Ms. Scott protesting the termination decision. She attached the EEOC's Enforcement Guidance of April 25, 2012, which states, "An employer's use of an individual's criminal history in making employment decisions may, in some instances, violate the prohibition against employment discrimination under Title

VII of the Civil Rights Act of 1964," because of its disparate impact on African-American and other minority employees and applicants.

25. In her email to Ms. Scott, Plaintiff challenged Defendant's uniform no-hire / must-fire policy as inconsistent with the EEOC's guidelines, writing:

> Dear Ms. Scott of Human Resources,
>
> Please take a moment to review the attached EEOC guidance on uniform "no-hire / must-fire" policies regarding criminal history.
>
> "Across-the-board" policies have been shown to disparately impact minority employees and applicants, and for that reason are deemed unlawful by the EEOC unless the employer can articulate a specific business necessity for the policy.
>
> The crimes for which I was convicted and maintain my innocence of, allegedly occurred in 2014/15 and long before I became an employee of Adventist Healthcare.
>
> The crimes for which I am continuing the long fight to clear my name of have had no bearing on my ability to deliver compassionate care to my patients, establish meaningful relationships with my colleagues or to mentor and precept new nurses and nursing students; as I have demonstrated during the past 15 months of my employment at AHC. My last performance evaluation attests to this.
>
> Lastly and obviously, the crime I was wrongfully convicted of did not preclude my hiring in March of 2018. I do not understand why or how it has now, all of a sudden, become a "specific business necessity" to terminate me.
>
> Ms. Scott, I am spiritually invested in my employment at Washington Adventist Hospital's Emergency Department. And would only be more so at White Oak Medical Center. It is my desire and hope that this correspondence will lead to positive, expedient discussions and an immediate revision of an outdated and questionably illegal employment policy.
>
> Best Regards,
> Semyya Cunningham

Ex. 2.

5

26. Ms. Scott responded on June 6. In her response, she did not deny that Defendant maintains a uniform no-hire / must-fire policy with respect to criminal history. To the contrary, she confirmed that Plaintiff was being fired specifically because of her criminal history, despite the fact that Plaintiff had disclosed it honestly on her job application and had worked successfully for Defendant for fifteen months:

> Dear Ms. Cunningham,
>
> We have considered your email below and we are not willing to reconsider the decision to terminate your employment with Adventist Healthcare, effective immediately.
>
> First, we disagree with your contention that the decision to terminate your employment constitutes race-based discrimination. This decision was made because we became aware that you have been convicted of serious crimes. We also disagree that your crimes were remote in time, and hence no longer relevant. As you know, you were convicted in February 2018. We also believe the nature of your criminal offenses, which involved fraud, are relevant to your job duties as a nurse.
>
> Finally, you note that AHC hired you even though you had already been convicted. This is correct; however, Adventist HealthCare Human Resources Leadership became aware of your conviction only recently. Had your criminal history been taken into account at the time of your hiring, you would not have been hired.
>
> After our decision to terminate your employment, we have learned that you are scheduled to commence a two-year term of imprisonment on July 1, 2019. We are troubled that you chose not to inform your managers that you would not be able to report to work as of that date.
>
> In sum, AHC is not willing to reconsider its decision to terminate your employment. You employment with AHC will be terminated, effective today, June 6, 2019. If you succeed in your efforts to appeal your conviction, you will be eligible for rehire.
>
> Sincerely,
>
> Donna

Ex. 3.

6

27. The uniform nature of Defendant's uniform no-hire / must-fire policy was specifically confirmed by Ms. Scott's statement, "Had your criminal history been taken into account at the time of your hiring, you would not have been hired."

28. Ms. Scott offered no explanation for why "the nature of [Plaintiff's] criminal offenses" was "relevant to [her] job duties as a nurse," and no such explanation exists.

29. Ms. Scott offered no explanation that would establish a business necessity for Defendant's uniform no-hire / must-fire policy based on employees' criminal history.

30. As the EEOC has observed, no-hire / must-fire employment policies based on criminal history—policies which are indistinguishable from Defendant's policy—have a discriminatory and detrimental impact on the employment opportunities available to African-American and other minority employees, in violation of Title VII.

31. On information and belief, Defendant's uniform no-hire / must-fire policy based on criminal history similarly has a discriminatory and detrimental impact on the employment opportunities available to African-American and other minority employees, such as Plaintiff.

32. Defendant's no-hire / must-fire policy cannot be justified by business necessity. Even if Defendant's policy could be justified by business necessity, less discriminatory alternatives exist that would equally serve such supposed necessity.

33. Plaintiff was denied employment opportunities as a result of Defendant's policy by being summarily terminated from employment and thus deprived of income, compensation, and benefits that she would otherwise have received.

## CAUSE OF ACTION

### COUNT ONE
### Disparate Impact Discrimination
### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*)

34. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

35. Defendant has a policy of relying on the criminal history information of applicants and employees when making employment decisions.

36. Defendant's policy has no business necessity.

37. Even if Defendant's policy could be justified by business necessity, less discriminatory alternatives exist and would equally serve such supposed necessity.

38. Defendant's policy has a discriminatory adverse impact on racial minority applicants and employees in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*

39. Plaintiff is herself African-American and thus falls within the class of persons upon whom Defendant's policy has a discriminatory adverse impact.

40. Plaintiff was terminated from her employment with Defendant as a direct result of Defendant's discriminatory policy.

41. As a direct result of Defendant's discriminatory policy, Plaintiff has suffered injury, including lost past and future income, compensation, and benefits.

42. As compensation for such injury, Plaintiff hereby requests relief as hereinafter described.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

    a)     back pay, compensation, and benefits;

    b)     reinstatement, or, in lieu of reinstatement, front pay;

c) attorneys' fees as provided by 42 U.S.C. § 2000e-5(k) or other applicable law;

d) the cost and disbursements of this action;

e) pre-judgment and post-judgment interest, as provided by law, and

f) such further and other relief as the Court deems just and proper.

Dated: ~~August xxx 2019~~ Sept 26, 2019

Respectfully submitted,

*Semyya Cunningham*

SEMYYA CUNNINGHAM, Plaintiff, Pro Se
42571 Good Hope Lane
Brambleton, VA 20148
703-560-3333
semyya_cunningham@yahoo.com

Defendant:
Adventist Healthcare, Inc.
820 W. Diamond Ave.
Gaithersburg, MD 20878